IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| TERRY HOFAKER, | | |
| Plaintiff, | | **8:25CV559** |
| vs. | | |
| STOKEY, Officer Kearney Police Department; SCHROEDER, Sergeant Kearney Police Department; JORGENSEN JR., Judge Buffalo County Court; BRANDON BRINEGAR, Buffalo County Public Defender's Office; MELANIE R. YOUNG, Prosecutor Buffalo County; COREY O'BRIEN, Prosecutor Phelps County; and ANDERSON, Sheriff Phelps County; | | **MEMORANDUM AND ORDER** |
| Defendants. | | |

Plaintiff Terry Hofaker, a non-prisoner, filed a Complaint on September 15, 2025. Filing No. 1. Plaintiff has been given leave to proceed in forma pauperis. Filing No. 5. The Court now conducts an initial review of Plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

## I.  SUMMARY OF COMPLAINT AND ADDITIONAL BACKGROUND

In his Complaint, Plaintiff identifies himself as "Chief Executor of the Terry Hofaker Living Trust United States Republic National, Private God-made Peaceful Man, [and] Friend to the United States Republic." Filing No. 1 at 1. Though Plaintiff's Complaint lacks a proper caption naming all the parties, see Fed. R. Civ. P. 10(a), liberally construed, Plaintiff sues Buffalo County Court Judge Jorgensen Jr. ("Judge Jorgensen"), Brandon Brinegar ("Brinegar") of the Buffalo County Public Defender's Office, Buffalo County Prosecutor Melanie R. Young ("Young"), and two Kearney Police Department officers—

Officer Stokey ("Stokey") and Sergeant Schroeder ("Schroeder")—(collectively "Buffalo County Defendants") for alleged violations of various statutes and his constitutional rights related to two Buffalo County criminal cases, CR25-1226 and CR25-239.  Plaintiff also sues Phelps County Prosecutor Corey O'Brien ("O'Brien") and Phelps County Sheriff Anderson ("Anderson") (collectively "Phelps County Defendants") for alleged statutory and constitutional violations related to two Phelps County criminal cases, CR25-52 and CR25-56.  The Court will summarize Plaintiff's allegations against each group of Defendants in turn.

### A.  Allegations against Buffalo County Defendants

On June 24, 2025, Plaintiff alleges Stokey assaulted him during the course of an apparent arrest.  Stokey "rushed [Plaintiff], grabbed [him], slammed [him] into a wall, and threw [Plaintiff] to the ground," and "[o]ther officers helped [Stokey] subdue [Plaintiff]." Filing No. 1 at 1.  In the course of this alleged assault, Plaintiff's glasses were knocked off and broken when an officer stepped on them and Plaintiff "suffered head injuries." *Id*. Plaintiff called his "girlfriend, and her daughter, aunt, and grandmother[, who] all heard what was happening.  Stokey seized [Plaintiff's] phone, mocked [him], and denied [his] repeated demands for a sergeant." *Id*. at 1–2.  However, Plaintiff also alleges that, "[w]hile in custody after Stokey's assault, Sgt. Schroeder appeared at the cruiser door." *Id*. at 2. Shroeder claimed Plaintiff had been driving to which Plaintiff replied, "No, I travel. The previous Buffalo County case, CR 25-239, was dismissed showing I was exercising my constitutional right." *Id*.  Schroeder responded, "This time we will make sure it sticks," and he told Plaintiff that "his officer, Stokey, claimed [Plaintiff] had assaulted him." *Id*. Plaintiff denied Stokey's claim as "a lie" and requested the body cam footage. *Id*.

2

Plaintiff was taken to jail where "Stokey falsely claimed a K-9 alert, threatened to break open [Plaintiff's] toolbox unless [he] gave him a key, and then created false charges including assault and DUS [Driving Under Suspension[1]]." *Id*. Stokey also injured Plaintiff "by speeding and cornering recklessly during transport." *Id*. Plaintiff alleges he "was jailed six days, placed in a suicide cell, denied proper medical care, and forced to pay $5,000 bond. This false case became CR 25-1226." *Id*.

With respect to Judge Jorgensen, Plaintiff alleges:

At video court while shackled, I told Judge Jorgensen Jr. I was under duress and exercising my rights. He spoke over me, ordered guards to remove me, and stated he was entering a "not guilty" plea on my behalf and assigning the Public Defender's Office. He set bond at $5,000, knowing I am disabled and receive only $679/month. Later, he refused to allow me to challenge probable cause, told me he would not hear it, and ordered me to obtain an attorney. He presided over spoliation of evidence, including suppression of bodycam and court video.

*Id*. at 3.

As the Court understands it, Brinegar was appointed to represent Plaintiff in CR 25-1226. Plaintiff asserts Brinegar "acted against [his] interests[,] . . . misrepresented the law, filed continuances without [Plaintiff's] authorization, intimidated [Plaintiff], refused to provide discovery, and falsely told [Plaintiff] that bodycam footage was unavailable." *Id*. Plaintiff also alleges Buffalo County Prosecutor Young "pursued false charges" against him in CR 25-1226 "[d]espite knowing [Plaintiff's] standing as a United States Republic national." *Id*. at 4. Young "ignored the dismissal of CR 25-239 and continued prosecution in bad faith." *Id*.

A search of Nebraska state court records, available to this Court online, shows that, on June 25, 2025, Plaintiff was charged in the County Court of Buffalo County,

---

[1] The Court understands "DUS" to mean "Driving Under Suspension."

Nebraska, in Case No. CR 25-1226 with third degree assault on an officer, a Class 3A felony, resisting arrest, a Class 1 misdemeanor, and driving under suspension, a Class 3 misdemeanor. The offense date for all three charges is June 24, 2025. On September 12, 2025, the case was bound over to the state district court and assigned Case No. CR 25-376, and the case remains pending with a pretrial conference scheduled for February 20, 2026.[2]

## B. Allegations against Phelps County Defendants

Plaintiff alleges Phelps County Prosecutor O'Brien "authorized an unethical warrant in CR 25-52" based on Sheriff Quintana's body cam footage that showed Plaintiff "clearly explaining my constitutional right to travel, affirming that this is what I was engaged in. I was not 'driving' in commerce but traveling as a free man. O'Brien knowingly disregarded this evidence and pursued charges in bad faith." Filing No. 1 at 4.

Subsequently, Sheriff Anderson pulled over Plaintiff in his automobile and arrested him, "creating CR 25-56." *Id*. at 5. Plaintiff alleges Anderson "pulled [him] out near the spoiler, declared: 'Fuck the Constitution,' seized [Plaintiff's] automobile, had it defaced at the impound lot, and forced [Plaintiff] to pay $180 to retrieve it." *Id*. Plaintiff "was jailed and forced to sign a bond under duress." *Id*.

Sometime after Anderson arrested him, Plaintiff "confronted O'Brien in his office," and O'Brien "refused to recognize [Plaintiff's] constitutional right to travel, grabbed at [Plaintiff], and then false reported to Sheriff Anderson that [Plaintiff] had driven." *Id*. at 4.

---

[2] This Court has been afforded access to the computerized record keeping system for the Nebraska state courts. The Court takes judicial notice of the state court records related to this case in *State v. Terry J. Hofaker*, Case No. CR 25-1226, County Court of Buffalo County, Nebraska, and *State v. Terry J. Hofaker*, Case No. CR 25-376, District Court of Buffalo County, Nebraska. *See Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (court may take judicial notice of judicial opinions and public records). Nebraska's judicial records may be retrieved on-line through the JUSTICE site, https://www.nebraska.gov/justice/case.cgi. Relevant records are attached to this Memorandum and Order.

A judge combined Plaintiff's cases—CR 25-52 and CR 25-56—and "released the Public Defender from service." *Id*. Plaintiff alleges that, shortly thereafter, O'Brien's office called him, "asking if [Plaintiff] would agree to continue the case," to which Plaintiff "agreed, but only one case was continued, which deliberately created a bench warrant" and Plaintiff "was forced to pay a $150 bond." *Id*. Plaintiff also alleges there is a date discrepancy between his bond paperwork and courthouse records, and "[t]his inconsistency is deliberate fraud." *Id*.

A search of Plaintiff's state court records shows that O'Brien filed a complaint on April 16, 2025, in Phelps County Court Case No. CR 25-52 charging Plaintiff with driving under suspension, a Class 3 misdemeanor. O'Brien also filed a complaint on April 24, 2025, in Phelps County Court Case No. CR 25-56 charging Plaintiff with driving under suspension, failure to display proper plates, a traffic infraction, and no proof of insurance, a Class 2 misdemeanor. Trial was held on November 24, 2025, in both cases, and Plaintiff was found guilty of all counts and sentenced to pay fines on each of the four counts.[3]

## C. Relief Requested

As relief, Plaintiff seeks damages from each Defendant in the total amount of $6,630,000.00. Plaintiff also requests "return of all bonds paid, waiver of all court fees, dismissal of all active cases (CR 25-1226, CR 25-52, CR 25-56), cease and desist restraining order against all officials named, [and] decommissioning and retraining of the K-9 officer and handler." Filing No. 1 at 6 (capitalization omitted and punctuation altered).

---

[3] The Court takes judicial notice of the state court records related to this case in *State v. Terry J. Hofaker*, Case No. CR 25-52, County Court of Phelps County, Nebraska, and *State v. Terry Hofaker*, Case No. CR 25-56, County Court of Phelps County, Nebraska. Relevant records are attached to this Memorandum and Order.

5

## II. STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate.  *See* 28 U.S.C. § 1915(e).  The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)).  Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).  This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004).  However,

6

even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

### III.  ANALYSIS OF COMPLAINT

Liberally construed, Plaintiff alleges federal constitutional and statutory claims.  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

Plaintiff's Complaint does not clearly specify whether each Defendant is sued in an official or individual capacity.  Under such circumstances, the Court applies the "course of proceedings" test: The fundamental question is whether the course of proceedings puts the defendant on notice that they are being sued in their individual capacity and that their personal liability is at stake.  *S.A.A. v. Geisler*, 127 F.4th 1133, 1139 (8th Cir. 2025).  The inquiry is whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly.  *Id*.

Here, Plaintiff requests damages so far in excess of his actual damages as to suggest they are punitive damages, and this requested relief necessarily implicates the Defendants in their individual capacities.  Because the Complaint seeks relief not available from the Defendants in their official capacities, it suggests an intent to sue them in their individual capacities. *Cf. id*. at 1139-40 (considerations include whether relief is not available from official capacity defendants).  Accordingly, the Court understands the Complaint to name the Defendants in both their official and individual capacities.

Upon review, the Court finds Plaintiff's Complaint fails to state a plausible claim for relief against any of the named Defendants in either their official or individual capacities. However, Plaintiff will be given leave to file an amended complaint against Defendant Stokey only as set forth below.

## A. Federal Criminal Statutes

As an initial matter, Plaintiff cites a number of federal criminal statutes in his Complaint and appears to assert that the Defendants violated these statutes. The statutes Plaintiff cites are: 18 U.S.C. § 241 (conspiracy against rights); 18 U.S.C. § 242 (deprivation of rights under color of law); 18 U.S.C. § 872 (extortion by federal officers or employees); 18 U.S.C. § 1001 (prohibiting false and fraudulent statements to the Federal Government); 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1361 (injury to federal property); 18 U.S.C. § 1519 (destruction or falsification of records in federal investigations or bankruptcy); 18 U.S.C. § 1951 (interference with commerce by extortion or robbery); and 18 U.S.C. § 2381 (treason).  However, Plaintiff cannot proceed under, or obtain relief pursuant to, these statutes as they do not provide Plaintiff a private right of action.

"It is well established that federal criminal statutes generally do not provide private rights of action." *Edwards v. Edwards*, No. 4:23-CV-4106-LLP, 2023 WL 7305026, at *8 (D.S.D. Nov. 6, 2023) (citing *Firson v. Zebro*, 339 F.3d 994, 999 (8th Cir. 2003) ("Criminal statutes, which express prohibitions rather than personal entitlements and specify a particular remedy other than civil litigation, are . . . poor candidates for the imputation of private rights of action . . . .") (quotation omitted)).  Case law is clear that Plaintiff does not have a private cause of action under 18 U.S.C. §§ 241 and 242, *see, e.g., United*

*States v. Wadena*, 152 F.3d 831, 846 (8th Cir. 1998); *Carter v. Muldoon*, No. 8:17CV319, 2018 WL 2049841, at *4 (D. Neb. May 1, 2018); 18 U.S.C. § 872, *see, e.g.*, *Knight v. Chatelain*, No. 8:19CV206, 2019 WL 2464789, at *3 (D. Neb. June 13, 2019), *aff'd*, 798 F. App'x 971 (8th Cir. 2020); 18 U.S.C. § 1001, *see, e.g.*, *Lee v. United States Agency for Int'l Dev.*, 859 F.3d 74, 78 (D.C. Cir. 2017); *Lee v. Omaha Hous. Auth. Found. Inc.*, No. 8:24CV203, 2025 WL 588030, at *5 (D. Neb. Feb. 24, 2025); 18 U.S.C. §§ 1341, 1343 and 1951, *see, e.g.*, *Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 407–09 (8th Cir. 1999); 18 U.S.C. § 1361, *see, e.g.*, *Vo v. Entergy of Baton Rouge*, No. CV 25-341, 2025 WL 2329557 (M.D. La. June 23, 2025), *report and recommendation adopted*, No. CV 25-00341-BAJ-EWD, 2025 WL 2323945 (M.D. La. Aug. 12, 2025); 18 U.S.C. § 1519, *see, e.g.*, *Horde v. Elliot*, No. 17-CV-800, 2018 WL 987683, at *9 (D. Minn. Jan. 9, 2018), *report and recommendation adopted*, No. 17-CV-0800, 2018 WL 985294 (D. Minn. Feb. 20, 2018); or 18 U.S.C. § 2381, *see, e.g.*, *Barrett v. Biden*, No. 1:22-CV-02823, 2022 WL 16528195, at *2 (D.D.C. Oct. 25, 2022); *Graemon v. Buckley*, No. CIV.06-2053, 2006 WL 1582124, at *3 (W.D. Ark. June 2, 2006).  Thus, to the extent Plaintiff premises any of his claims on these criminal statutes, such claims must be dismissed.

## B.  Claims Against Judge Jorgensen

Plaintiff sues Judge Jorgensen in both his official and individual capacity for damages and injunctive relief.  The Eleventh Amendment bars claims for damages by private parties against a state.  *See, e.g.*, *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618–19 (8th Cir. 1995); *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 446–47 (8th Cir. 1995).  Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of

9

immunity by the state or an override of immunity by Congress.  *See, e.g.*, *Dover Elevator Co.*, 64 F.3d at 444; *Nevels v. Hanlon*, 656 F.2d 372, 377–78 (8th Cir. 1981).  A state's sovereign immunity extends to public officials sued in their official capacities as "[a] suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999).

As a county court judge within the Nebraska Judicial Branch, Judge Jorgensen is a state official, *see State ex rel. Stenberg v. Murphy*, 527 N.W.2d 185, 192 (Neb. 1995) ("a district court judge . . . is a state officer . . . who exercises the power of the judicial department of government" (internal citation omitted)), and Plaintiff's official-capacity claims against Judge Jorgensen are claims against the state, *see El v. Daniels*, No. 8:22CV203, 2023 WL 3004577, at *4 (D. Neb. Apr. 19, 2023) (official-capacity claims against state court judge are claims against state); *McKinnies v. McCulley*, No. 4:23-CV-0080 RLW, 2023 WL 1765201, at *4 (E.D. Mo. Feb. 3, 2023) (same).  There is nothing in the record before the Court showing that the State of Nebraska waived, or that Congress overrode, sovereign immunity in this matter.  Thus, Plaintiff's claims for damages against Judge Jorgensen in his official capacity are dismissed.

There is an exception to sovereign immunity.  "State officials acting in their official capacities are § 1983 'persons' when sued for prospective relief, and the Eleventh Amendment does not bar such relief." *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997), *abrogated on other grounds*, *S.A.A. v. Geisler*, 127 F.4th 1133 (8th Cir. 2025).  Though Plaintiff seeks prospective relief in this case, he cannot obtain the relief he seeks because Judge Jorgensen is entitled to absolute immunity.

A judge is immune from suit, including suits brought under § 1983 to recover for alleged deprivation of civil rights, in all but two narrow sets of circumstances. *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012). "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* (internal citations omitted). An act is judicial if "it is one normally performed by a judge and if the complaining party is dealing with the judge in his judicial capacity." *Id.* (internal citations omitted).

Here, it is clear from the Complaint's allegations that neither of the two exceptions to judicial immunity apply here. Although Plaintiff alleges Judge Jorgensen deprived Plaintiff of his constitutional rights, Plaintiff alleges no facts regarding Judge Jorgensen's conduct that would fall outside the scope of a judge's duties in presiding over criminal proceedings. Accordingly, Judge Jorgensen is entitled to immunity.

In addition, section 1983 "precludes injunctive relief against a judicial officer 'for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable.'" *Hoffman v. Ferguson*, No. CIV. 09-5052, 2009 WL 1606736, at *2 (W.D. Ark. June 5, 2009) (quoting 42 U.S.C. § 1983). Here, Plaintiff does not allege that either of the prerequisites for injunctive relief are met. *See Id.* (dismissing claims for injunctive relief against state magistrate judge because plaintiff failed to allege that a declaratory decree was violated or that declaratory relief was unavailable). Furthermore, "[e]quitable relief is not appropriate where an adequate remedy under state law exists." *Id.* at *3 (citing *Pulliam v. Allen*, 466 U.S. 522, 542 & n.22 (1984)). There is no indication that Plaintiff has been or will be prevented from seeking

11

review of any of his constitutional claims arising out of Judge Jorgensen's rulings in CR25-1226 either in the pending district court criminal proceedings or on appeal.   *See id*. ("An adequate remedy at law exists when the acts of the judicial officer can be reviewed on appeal or by extraordinary writ.").

Based on the foregoing, the Court will dismiss Plaintiff's claims against Judge Jorgensen because he is immune from suit.

## C. Official Capacity Claims Against Remaining Defendants

Plaintiff's claims against Stokey, Schroeder, Brinegar, Young, O'Brien, and Anderson in their official capacities are actually claims against their respective employers—the City of Kearney (Stokey and Schroeder), Buffalo County (Brinegar and Young), and Phelps County (O'Brien and Anderson).   *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent.").   In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that a municipality (or other local government unit) can be liable under 42 U.S.C. § 1983 if an "action pursuant to official municipal policy of some nature caused a constitutional tort."   *Id*. at 691.

To prevail on a claim alleged against either the City of Kearney or Buffalo or Phelps County, Plaintiff must show that the constitutional violation resulted from (1) an official "policy," (2) an unofficial "custom," or (3) a deliberately indifferent failure to train or supervise.   *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016).   "Official policy involves 'a deliberate choice to follow a course of action . . . made from among various alternatives' by an official who has the final authority to establish governmental policy."   *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cnty.*,

12

901 F.2d 642, 645 (8th Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).

> Alternatively, a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation."

*Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017) (quoting *Corwin*, 829 F.3d at 699-700). A municipal liability claim based on a theory of inadequate training or supervision is simply an extension of a claim based on a "policy" or "custom" theory of municipal liability. *Marsh v. Phelps Cnty.*, 902 F.3d 745, 751 (8th Cir. 2018).

Here, Plaintiff's Complaint fails to allege that any actions were taken pursuant to a City or County policy or custom, nor does the Complaint allege facts suggesting a failure to train by the City or the Counties. "Although [Plaintiff] need not set forth with specificity the existence of an unconstitutional policy or custom at the pleading stage, he must nonetheless present some allegations, references, events, or facts from . . . which the court could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom of the County or a deliberate choice by a decision-maker with final authority." *Cotton v. Douglas Cnty. Dep't of Corr.*, No. 8:16CV153, 2016 WL 5816993, at *6 (D. Neb. Oct. 5, 2016). Accordingly, Plaintiff's Complaint fails to state a claim against Stokey, Schroeder, Brinegar, Young, O'Brien, and Anderson in their official capacities and such claims will be dismissed.

## D. Individual Capacity Claims

### 1. Prosecutors Young and O'Brien

Liberally construed, Plaintiff alleges Young and O'Brien both initiated criminal proceedings against him and prosecuted those proceedings against him in bad faith. Plaintiff's claims, however, are barred by prosecutorial immunity. "Prosecutors are entitled to absolute immunity from civil liability under § 1983 when they are engaged in prosecutorial functions that are 'intimately associated with the judicial process.'" *Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006) (quoting *Anderson v. Larson*, 327 F.3d 762, 768 (8th Cir. 2003)). Thus, absolute immunity attaches when a prosecutor's actions are "prosecutorial" rather than "investigatory or administrative." *Id*. "Absolute immunity covers prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process." *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir.1996). "Prosecutors . . . are entitled to immunity for the decision to bring charges 'whether [they] have] probable cause or not.'" *Jordan v. Bell*, No. 4:21CV1242 HEA, 2022 WL 4245440, at *5 (E.D. Mo. Sept. 15, 2022) (quoting *Saterdalen v. Spencer*, 725 F.3d 838, 843 (8th Cir. 2013) (internal quotation omitted)). Moreover, "[b]ecause [prosecutorial] immunity depends upon the functional nature of the prosecutor's activities, allegations of improper motive in the performance of prosecutorial functions will not defeat its protection." *Id.* (internal quotation marks omitted) (quoting *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016)).

Here, Plaintiff alleges Young pursued allegedly false charges against him despite his "standing as a United States Republic national" and dismissal of a previous criminal

14

case.  Filing No. 1 at 4.  Similarly, Plaintiff alleges O'Brien pursued criminal charges against him in disregard of Plaintiff's evidence that he was not "driving," but only "traveling as a free man," and failed to continue a case resulting in the issuance of a bench warrant for Plaintiff.  Id.  Plaintiff does not allege any facts against either Young or O'Brien that suggest any actions taken outside the scope of their prosecutorial functions during Plaintiff's criminal proceedings.  Accordingly, the Court will dismiss Plaintiff's claims against Young and O'Brien without leave to amend as they are immune from suit.

### 2. Brinegar

Plaintiff's claims against Brinegar, his appointed public defender, cannot proceed under 42 U.S.C. § 1983.  As stated above, 42 U.S.C. § 1983 specifically provides a cause of action against a person who, under color of state law, violates another's federal rights.  West, 487 U.S. at 48.  "[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."  Polk Cnty. v. Dodson, 454 U.S. 312, 325 (1981).  Indeed, when a public defender represents an indigent defendant in a state criminal proceeding, he is "not acting on behalf of the State; he is the State's adversary."  Id. at 322 n.13.  While a § 1983 claim may be brought against a public defender, or any other private individual, if he or she conspires with a state actor to deprive an individual of a federally-protected right, Manis v. Sterling, 862 F.2d 679, 681 (8th Cir. 1988), the Complaint's allegations in no way suggest a plausible conspiracy claim between Brinegar and a state actor.  Accordingly, the Court concludes Plaintiff's Complaint fails to state a claim for which relief may be granted against Brinegar.  The Court finds leave to amend is not warranted because the Court must abstain from granting Plaintiff the relief he seeks against Brinegar and any

15

other Defendant related to his ongoing criminal proceedings pursuant to *Younger v. Harris*, 401 U.S. 37 (1971).

The abstention doctrine set forth in *Younger v. Harris*, directs that "federal courts should abstain from exercising their jurisdiction if (1) there is an ongoing state proceeding, (2) that implicates important state interests, and (3) that provides an adequate opportunity to raise any relevant federal questions." *Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245, 1249 (8th Cir. 2012). Absent extraordinary circumstances, this Court must abstain from exercising jurisdiction over any civil action that challenges Plaintiff's ongoing criminal court proceedings. *See Hudson v. Campbell*, 663 F.3d 985, 987 (8th Cir. 2011) ("The *Younger* abstention doctrine derives from notions of federalism and comity. *Younger* itself held that, absent extraordinary circumstances, federal courts should not enjoin pending state criminal prosecutions.").

Here, Plaintiff asks this Court for injunctive relief requiring Brinegar to cease and desist his actions and dismissing CR 25-1226, which, as explained above, was bound over to the Buffalo County District Court in CR 25-376 and remains pending. Plaintiff's state court records in CR 25-376 also show that Brinegar entered an appearance as Plaintiff's stand-by counsel on January 12, 2026.[4] Plaintiff has alleged no extraordinary circumstances in his Complaint that would warrant the Court's interference with his ongoing criminal proceedings. Thus, any claims for relief related to Plaintiff's pending Buffalo County criminal case, or Brinegar's conduct in that case, will be dismissed without prejudice pursuant to *Younger*.

---

[4] See attached Entry of Appearance, CR 25-376, filed on January 12, 2026.

16

### 3. Officer Defendants Anderson, Schroeder, and Stokey

Because of the Court's above ruling, only Plaintiff's claims against Phelps County Sheriff Anderson and Kearney Police Department Officers Schroeder and Stokey remain. Construed liberally, Plaintiff brings claims against Anderson, Schroeder, and Stokey for violating his right to travel and Fourth Amendment rights against unreasonable seizure and excessive force.

#### i. Right to travel

Liberally construed, Plaintiff alleges Anderson violated his right to travel when he pulled him over, "creating CR 25-56" in which Plaintiff was charged with, and found guilty of, driving under suspension, failure to display proper plates, and no proof of insurance. *See* Filing No. 1 at 5.  Plaintiff may also be asserting a similar claim against Stokey and Schroeder based on his arrest which became CR 25-1226 and CR 25-376.  *See Id*. at 2. The constitutional right to travel has three components: (1) "the right of a citizen of one State to enter and to leave another State"; (2) "the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State"; and, (3) "for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State." *Saenz v. Roe*, 526 U.S. 489, 500 (1999).  However, a "police officer's enforcement of a valid traffic law does not violate the motorist's right to travel." *United States v. Hare*, 308 F. Supp. 2d 955, 1001 (D. Neb. 2004).

Plaintiff does not allege that he was traveling from one state to another nor does he assert that he was unlawfully stopped by Anderson, Stokey, or Schroeder.  Additionally, in CR 25-56, Plaintiff was found guilty of driving under suspension and not having valid license plates on his vehicle.  As such, Plaintiff has not sufficiently alleged a violation of

17

his right to travel, and the Court will dismiss this claim without prejudice. *See Pack v. City of Saint Ann*, No. 4:24 CV 1658, 2025 WL 1413729, at *6 (E.D. Mo. May 14, 2025) (dismissing pro se right to travel claim brought by motorist stopped for traffic violation); *Seppanen v. Brown Cnty. Sheriff's Dep't, Off. Capacity*, No. 1:24-CV-01017, 2025 WL 239137, at *4 (D.S.D. Jan. 17, 2025) (same).

### ii. Fourth Amendment unreasonable seizure

Plaintiff's Complaint may be liberally construed as asserting a claim against Anderson for unlawful seizure of his automobile. The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "Impounding a vehicle generally constitutes a seizure under the [F]ourth [A]mendment." *United States v. Dorsett*, No. 8:08CR356, 2009 WL 2386068, at *5 (D. Neb. June 15, 2009) (citing *United States v. Johns*, 469 U.S. 478, 484 (1985)), *objections sustained on other grounds*, No. 8:08CR356, 2009 WL 2386070 (D. Neb. July 23, 2009).

"The warrantless seizure of property is per se unreasonable unless it falls within a well-defined exception to the warrant requirement." *Robbins v. City of Des Moines*, 984 F.3d 673, 680 (8th Cir. 2021) (citing *Dixon v. Lowery*, 302 F.3d 857, 862 (8th Cir. 2002)). However, "[i]mpoundment of a vehicle for the safety of the property and the public is a valid community caretaking function of the police, which does not require a warrant." *United States v. Kimhong Thi Le*, 474 F.3d 511, 514 (8th Cir. 2007) (quoting *United States v. Petty*, 367 F.3d 1009, 1011 (8th Cir. 2004) (internal quotation marks omitted)). "The impounding of a vehicle passes constitutional muster so long as the decision to impound is guided by a standard policy—even a policy that provides officers with discretion as to

the proper course of action to take—and the decision is made 'on the basis of something other than suspicion of evidence of criminal activity.'" *Id*. (quoting *Colorado v. Bertine*, 479 U.S. 367, 375 (1987)).

Plaintiff alleges Anderson impounded his vehicle after Anderson pulled over his vehicle and arrested and jailed Plaintiff for the charges that became CR 25-56. However, "[o]nce police have arrested a vehicle's occupant, police may take protective custody of the vehicle." *King v. Allison*, No. 4:21CV3052, 2021 WL 1820478, at *3 (D. Neb. May 6, 2021) (citing *United States v. Petty*, 367 F.3d 1009, 1012 (8th Cir. 2004)). Thus, even liberally construed, Plaintiff's allegations fail to state a plausible Fourth Amendment claim of unreasonable seizure, and the Court will dismiss this claim without prejudice.

### iii. Fourth Amendment excessive force

Plaintiff's Complaint also may be liberally construed as raising claims against Anderson, Schroeder, and Stokey for excessive force in violation of his Fourth Amendment rights. The Fourth Amendment guarantees the right to be free from excessive force during an arrest. *Jackson v. Stair*, 944 F.3d 704, 709 (8th Cir. 2019) (citing *Graham v. Connor*, 490 U.S. 386, 394–95 (1989)). "An excessive force claim 'is governed by the Fourth Amendment's prohibition against unreasonable seizures,'" *Thompson v. Dill*, 930 F.3d 1008, 1013 (8th Cir. 2019) (quoting *Loch v. City of Litchfield*, 689 F.3d 961, 965 (8th Cir. 2012)), and "is evaluated under the reasonableness standard of the Fourth Amendment," *Coker v. Arkansas State Police*, 734 F.3d 838, 842 (8th Cir. 2013) (internal quotation and citation omitted).

To show a Fourth Amendment violation by the use of force, a plaintiff must establish (1) that he was "seized"[5] within the meaning of the Fourth Amendment and (2) that an officer's use of force was objectively unreasonable given the facts and circumstances of the incident as "judged from the perspective of a reasonable officer on the scene." *Bishop v. Glazier*, 723 F.3d 957, 961 (8th Cir. 2013) (internal quotation and citation omitted); *see also Atkinson v. City of Mountain View*, 709 F.3d 1201, 1209 (8th Cir. 2013). "Relevant factors include (1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" *Mitchell v. Kirchmeier*, 28 F.4th 888, 898 (8th Cir. 2022) (quoting *Graham*, 490 U.S. at 396). The Court may also consider the result of the force. *Smith v. Kansas City, Mo. Police Dep't*, 586 F.3d 576, 581 (8th Cir. 2009). "Force may be objectively unreasonable when a plaintiff does not resist, lacks an opportunity to comply with requests before force is exercised, or does not pose an immediate safety threat." *Wilson v. Lamp*, 901 F.3d 981, 989 (8th Cir. 2018) (citing *Smith*, 586 F.3d at 581). The Eighth Circuit, however, has held that officers may use "de minimis force" to effect an arrest even "if a person is not suspected of a serious crime, is not threatening anyone, and is neither fleeing nor resisting arrest." *Mitchell*, 28 F.4th at 898; *see also Graham*, 490 U.S. at 396 ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily

---

[5] To constitute a "seizure" under the Fourth Amendment, there must be a willful or intentional application of physical force, as determined by the "officer's objective behavior," or the plaintiff's submission to the police officer's show of authority. *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1208 (8th Cir. 2013). A seizure must "restrain[] . . . freedom of movement," but the "restraint need not actually succeed in stopping or holding [the person] even for an instant." *Id.* (internal quotations, alterations, and citations omitted) (police officer's "bull rush" at plaintiff was "more than enough physical force to effect a seizure under the Fourth Amendment" (citing cases)).

carries with it the right to use some degree of physical coercion or threat thereof to effect it.").

As to Anderson, Plaintiff alleges only that Anderson "pulled [him] out near the spoiler[ and] declared: 'Fuck the Constitution.'" Filing No. 1 at 5. Plaintiff's allegations fail to show that Anderson used more than de minimis force against him, and his excessive force claim against Anderson must be dismissed. *See Seppanen*, 2025 WL 239137, at *4 (dismissing excessive force claim where pro se plaintiff alleged only that officer pulled plaintiff from his vehicle) (citing *Howell v. City of Lithonia*, 397 F. App'x 618, 620 (11th Cir. 2010) (Taking the plaintiff "out of his car and pushing him against the police car to effectuate an arrest constitute[s] de minimis force." (citing *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000)))).

With respect to Schroeder, Plaintiff alleges only that Schroeder spoke to Plaintiff while he was in custody in a police cruiser. While Plaintiff appears to claim that Schroeder's statements and comments to him constituted "terroristic threats," *see* Filing No. 1 at 2 (capitalization omitted), nothing Plaintiff alleges suggests Schroeder's conduct violated the Fourth Amendment or any other federal constitutional right. Accordingly, the Court concludes Plaintiff's Complaint fails to state a plausible claim for relief against Schroeder and Schroeder will be dismissed from this action.

Finally, Plaintiff alleges that Stokey "assaulted" him by rushing him, grabbing him, slamming him into a wall, and throwing him to the ground, resulting in Plaintiff's glasses being knocked off and broken and Plaintiff suffering "head injuries." *Id*. at 1. Plaintiff also asserts Stokey injured him "by speeding and cornering recklessly during transport." *Id*. at 2. Plaintiff, however, does not provide any factual context for the encounter between

21

Stokey and himself, such as how or why the encounter was initiated or who initiated contact, nor does he elaborate as to the injuries he allegedly suffered. As the Supreme Court has explained, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (internal citation omitted) (quoting *Twombly*, 550 U.S. at 555, 557). Moreover, Plaintiff's allegation that "[o]ther officers helped [Stokey] subdue" him, Filing No. 1 at 1, raises an inference that Plaintiff may have been resisting arrest, which is further supported by Plaintiff's pending charge for resisting arrest in CR 25-376. Without any other facts, the Court cannot conclude on the face of the Complaint whether Stokey's actions were objectively unreasonable "'in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.'" *Franklin v. Peterson*, 878 F.3d 631, 635 (8th Cir. 2017) (quoting *Graham*, 490 U.S. at 397). The Court will, however, give Plaintiff leave to amend his Fourth Amendment claims against Stokey as set forth below.

**E.  State-Law Claims**

Lastly, Plaintiff appears to assert claims against the Defendants under various Nebraska criminal statutes. Plaintiff's state-law claims can only be litigated in this action through exercise of the Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). However, even if Plaintiff amends his Complaint to allege a plausible federal claim for relief against Defendant Stokey, the Court would decline to exercise supplemental jurisdiction over Plaintiff's purported state-law claims as none of the Nebraska criminal statutes Plaintiff cites provide him a private right of action. *See Stamm v. Cnty. of Cheyenne, Nebraska*, 326 F. Supp. 3d 832, 849 n.11 (D. Neb. 2018) (no private right of

action provided by Nebraska criminal statutes relied up on by plaintiff); *Ervin & Smith Advert. & Pub. Rels., Inc. v. Ervin*, No. 8:08CV459, 2009 WL 249998, at \*5–6 (D. Neb. Feb. 3, 2009) ("[A] violation of Nebraska's criminal statutes does not give rise to a civil cause of action . . . .").

### IV.  CONCLUSION

Plaintiff's Complaint fails to state a plausible claim for relief against any of the Defendants and is subject to preservice dismissal under 28 U.S.C. § 1915(e)(2). Specifically, Plaintiff's Complaint fails to state a claim for relief against the Defendants in their official capacities; Judge Jorgensen, Young, and O'Brien are immune from suit; and Plaintiff fails to allege plausible claims for relief against Brinegar, Anderson, Schroeder, and Stokey in their individual capacities.  However, on the Court's own motion, Plaintiff will be given 30 days to file an amended complaint that states a plausible Fourth Amendment claim against Defendant Stokey in his individual capacity only.  All other Defendants will be dismissed from this action without prejudice and without leave to amend.  In amending his Complaint, Plaintiff should be mindful to explain what Stokey did to him, when Stokey did it, and how Stokey's actions harmed him.  Plaintiff is warned that any amended complaint he files will supersede, not supplement, his prior pleading.

If Plaintiff fails to file an amended complaint in accordance with this Memorandum and Order, this action will be dismissed without prejudice and without further notice.  The Court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2) after he files an amended complaint which addresses the matters set forth in this Memorandum and Order.

IT IS THEREFORE ORDERED that:

1.      Plaintiff's claims against all Defendants in their official capacities and against Judge Jorgensen, Young, O'Brien, Brinegar, Schroeder, and Anderson are dismissed without prejudice.  The Clerk of the Court is directed to remove Judge Jorgensen Jr., Melanie R. Young, Corey O'Brien, Brandon Brinegar, Schroeder, and Anderson as defendants to this action.

2.      Plaintiff shall have 30 days to file an amended complaint that states a plausible Fourth Amendment claim against Defendant Stokey in his individual capacity. Failure to file an amended complaint within the time specified by the Court will result in the Court dismissing this case without further notice to Plaintiff.

3.      In the event that Plaintiff files an amended complaint, Plaintiff shall restate the relevant allegations of the Complaint, Filing No. 1, and any new allegations.  Failure to consolidate all claims into one document may result in the abandonment of claims. Plaintiff is warned that an amended complaint will supersede, not supplement, his prior pleadings.

4.      The Court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2) in the event he files an amended complaint.

5.      The Clerk of Court is directed to set a pro se case management deadline using the following text: **March 2, 2026**: check for Plaintiff's amended complaint.

Dated this 29th day of January, 2026.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge

24